UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRITTANY MARIE ZEVENBERGEN-ORTIZ,

    Plaintiff,

v.   Case No. 1:17-CV-133
    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which issued a partially favorable decision for disability insurance benefits (DIB) claim.

      Plaintiff alleged a disability onset date of September 15, 2012 when she was involved in a motor vehicle accident. PageID.49, 233. Plaintiff identified her disabling conditions as: blind; left knee injury; left arm injury; and right foot injury. PageID.237. Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a call center representative, customer service representative, and receptionist. PageID.238. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a partially favorable written decision on January 27, 2016. PageID.44-55. In this decision, the ALJ found that plaintiff was under a disability, as defined by the Social Security Act, from September 15, 2012 through October 8, 2015. PageID.48. Plaintiff contests the ALJ's finding that her disability ended on October 8,

1

2015. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

### A. Plaintiff's condition from September 15, 2012 through October 8, 2015

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 15, 2012, the date she became disabled, and that she meets the insured status requirements of the Social Security Act through September 30, 2025. PageID.47.

At step two, the ALJ found that from September 15, 2012 through October 8, 2015, the period during which the claimant was under a disability, the claimant had the following severe impairments: status post left knee dislocation with knee reconstruction and ligament and tendon repair surgeries; status post surgical repair of 1ight foot tendon lacerations; status post closed reduction of right metatarsal fracture; status post small bowel resection surgery and repair; status post right pelvic superior rami fracture; status post scapula fracture; brachial plexopathy on the left side; blindness in the right eye; and obesity. PageID.48. At step three, the ALJ found that from September 15, 2012 through October 8, 2015, plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.48.

The ALJ decided at the fourth step that:

> [F]rom September 15, 2012 through October 8, 2015, the claimant had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) that includes an ability to lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; but can only lift 2 pounds with her non-dominant left upper extremity alone; stand or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; may only occasionally perform fine manipulation with her left upper extremity, but has no limitations with fine manipulation with her 1ight upper extremity; and should have no exposure to unprotected heights or hazardous machinery; no fine manipulation with her left hand, but can use it has a helper hand; and miss work 3 or more days per month.

4

PageID.48. The ALJ also found that from September 15, 2012 through October 8, 2015, plaintiff was unable to perform any past relevant work. PageID.51.

At the fifth step, the ALJ determined that from September 15, 2012 through October 8, 2015, considering the claimant's age, education, work experience, and residual functional capacity (RFC), there were no jobs that existed in significant numbers in the national economy that the claimant could have performed. PageID.52. Accordingly, the ALJ found that plaintiff was under a disability, as defined by the Social Security Act, from September 15, 2012 through October 8, 2015. PageID.53.

### B. Plaintiff's condition since October 9, 2015

The ALJ found that plaintiff was no longer disabled as of October 9, 2015, based on the following determinations made at steps two, three, four and five. At step two, the ALJ found that plaintiff has not developed any new impairment or impairments since October 9, 2015, the date her disability ended, and that her current severe impairments are the same as that present from September 15, 2012 through October 8, 2015. PageID.53. At step three, the ALJ found that beginning October 9, 2015, plaintiff has not had an impairment or combination of impairments that met or medically equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that medical improvement occurred as of October 9, 2015, the date plaintiff's disability ended. *Id*. In addition, the medical improvement that has occurred is related to the ability to work because there has been an increase in plaintiff's RFC. *Id*. In comparing plaintiff's RFC for the period during which she was disabled with the RFC beginning October 9, 2015, the ALJ found that plaintiff's RFC for basic work activities increased:

5

After careful consideration of the entire record, the undersigned finds that, beginning October 9, 2015, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) that include an ability to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; but can only lift 2 pounds with her non-dominant left upper extremity alone; stand or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; may only occasionally perform fine manipulation with her left upper extremity, but has no limitations with fine manipulation with her right upper extremity; and should have no exposure to unprotected heights or hazardous machinery.

PageID.53. The ALJ also found that plaintiff is still unable to perform any past relevant work. PageID.54.

At the fifth step, the ALJ determined that, beginning October 9, 2015, plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.54-55. Specifically, the ALJ found that plaintiff could perform the requirements of sedentary unskilled occupations such as production inspector (20,000 jobs nationally), surveillance system monitor (42,000 jobs nationally), and information clerk (40,000 jobs nationally). PageID.55. Accordingly, the ALJ determined that plaintiff was under a disability, as defined by the Social Security Act, from September 15, 2012 through October 8, 2015, and that the disability ended on October 9, 2015. PageID.53, 55.

### III. DISCUSSION

Plaintiff contends that the ALJ's decision that she was not disabled after October 2015 is not supported by substantial evidence, setting forth three related issues on appeal[1]:

**A. This Court should consider the post-hearing evidence because it demonstrates that plaintiff's condition did not improve, contrary to the ALJ's conclusion.**

**B. The ALJ did not have substantial evidence to support her RFC findings in this case.**

---

[1] The Court notes that plaintiff does not present discrete arguments with respect to each of her alleged errors. Accordingly, the Court will review them together.

**C. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physician.**

**1. Background**

Plaintiff asks the Court to remand this matter for consideration of post hearing evidence that was not available until after the ALJ issued her decision on January 25, 2016. The gist of plaintiff's claim is that the ALJ's finding that her condition improved during October 2015 is wrong, and that this can be demonstrated by medical records which plaintiff's counsel requested before the administrative hearing but which were not received until February 2016. When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id*. "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012).

As an initial matter, plaintiff does not explicitly identify the post-hearing evidence at issue.[2] The records cited in her brief (PageID.793-800) appear to have been faxed on December 15, 2015, a few weeks before plaintiff's January 5, 2016 administrative hearing. It appears that plaintiff is relying on the documents which her counsel sent to the Appeals Council: Senior Helpers Employment termination letter (Oct. 14, 2016) (Exh.15E) (PageID.292); medical treatment records from Stephen C. Bloom, D.O. (Nov. 10, 2015) (Exh. 21F) (PageID.800-802); and medical treatment records from James D. Hudson, M.D. (Dec. 2, 2015) (Exh. 22F) (PageID.803-807). The Appeals Council reviewed these exhibits prior denying plaintiff's request for review. PageID.26-31.

In addition, plaintiff's brief does not address the legal standard for medical improvement which the Court should apply to determine the materiality of the new records. Plaintiff's claim is construed as a "closed period case," i.e., one in which the ALJ determined that

---

[2] The Court notes that some of plaintiff's citations to "PageID" numbers do not match the records discussed in her brief.

the claimant was disabled for a finite period of time that commenced and ended prior to the date of the ALJ's decision. *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). The medical improvement standard applies to closed period cases. "Once an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial gainful activity.'" *Niemasz v. Barnhart*, 155 Fed.Appx. 836, 840 (6th Cir. 2005), quoting 42 U.S.C. § 423(f)(1). The phrase "Medical improvement" is defined in 20 C.F.R. § 404.1594(b)(1) in relevant part as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

Here, the ALJ explained her basis finding that plaintiff was no longer disabled due to her medical improvement:

> The claimant improved to the point that she is able to drive without restrictions. Her orthopedist allowed her to return to work without restrictions as of February 11, 2014 but, at that point she still had some left hand problems. The medical records from late 2014 show that she refused her doctor's offer for hand surgery (Exhibit 14F/1). She only did physical therapy, but it seemed to work well. On February 16, 2015, she stated that she was able "to do most everything that I need to do" (Exhibit 18F/4).
>
> By October 8, 2015, the claimant reported a steady decrease in the frequency and intensity of her pain symptoms (Exhibit 18F/2). Lisa Makuch, Ph.D., found her prognosis was very good, provided she remain committed to stress reducing, health-promoting behaviors. She admitted that she was looking for part time work and she was assisting her aunt with data entry (Exhibit 18F/17). Although she was unable to tolerate the data helper job, she was investigating work as an elder helper. Her left upper extremity strength was 5/5 and her left grip strength was between 10-15 pounds (Exhibit 18F/18).
>
> The undersigned finds that, at the hearing, she was actually able to move her hand quite well, and the fact she was even attempting a data entry job shows

she had greater function in that hand than she alleges. Her refusal to do surgery also indicates that her functioning is not as bad as alleged (Exhibit 18F/17-19). Moreover, the provider discharged her from the pain management program on October 15, 2015. Overall, the record shows that her condition substantially improved to justify the revised residual functional capacity.

PageID.53-54.

### 2. The new evidence

#### a. The termination letter

The October 14, 2016 letter from plaintiff's former employer stated that plaintiff was terminated "because due to your requested work schedule, you cannot meet the requirements of the full-time office manager, a work schedule of Monday through Friday from 8:00 a.m. to 5:00 p.m." PageID.292. Plaintiff has not shown good cause for failing to present this letter to the ALJ. The letter was not in existence prior to the date of the ALJ's decision and reflected events which occurred in the nine months after the decision. Furthermore, this letter was not material. While plaintiff was terminated from an office manager position in October 2016, there is no evidence that the duties of this position fell within plaintiff's RFC.

#### b. Records of Dr. Bloom and Dr. Hudson

At the hearing, plaintiff's counsel stated that he requested these medical records on November 20, 2015 (more than one month before the administrative hearing), but had still not received them at the time of the hearing. PageID.65. It appears that counsel received these records on February 15, 2016, a few weeks after the ALJ's decision. Based on this record, counsel has demonstrated good cause. Dr. Bloom's record from November 10, 2015 stated that plaintiff had stopped all meds for left hand pain and was independent with driving. PageID.801. Nevertheless the doctor stated that plaintiff was to investigate acupuncture with the pain clinic, stated that he was "in support of full disability," and wrote "a prescription for off from work [six months]." *Id*.

10

Dr. Hudson from Mary Free Bed Rehabilitation Hospital examined plaintiff on December 2, 2015, and diagnosed her with left hand weakness, intractable neuropathic pain of left hand, and depression. PageID.804. The doctor noted "atrophy of the intrinsic muscles of the left hand and weakness of the wrist flexors and extensors." PageID.806. Plaintiff reported that "[s]he has been trying various splints for typing which has not gone well," that "[h]er wage replacement has run out and she is afraid she won't be able to go back to doing the transcription work that she used to do." PageID.804. Dr. Hudson continued plaintiff's medication (Celexa) and recommended an acupuncture evaluation and treatment for the next two months. PageID.806.

Taken together, it appears to the Court that the records of Dr. Bloom and Dr. Hudson are material and appear to contradict the ALJ's conclusion that plaintiff experienced medical improvement by October 9, 2015, i.e., plaintiff's had left hand weakness with atrophied muscles and the doctor prescribed another course of pain treatment for two months (acupuncture). In the Court's opinion, plaintiff has demonstrated "that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Accordingly, this matter will be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of the new evidence from Dr. Bloom and Dr. Hudson.

IV. **CONCLUSION**

The ALJ's decision shall be remanded pursuant to sentence six of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to review the records of Dr. Bloom (Nov. 10, 2015) (Exh. 21F) (PageID.800-802) and Dr. Hudson (Dec. 2, 2015) (Exh. 22F) (PageID.803-807)

and re-evaluate whether plaintiff's disability ended on October 9, 2015. An order consistent with this opinion will be issued forthwith.


Dated:  March 26, 2018 	/s/ Ray Kent
	United States Magistrate Judge